## PENNSYLVANIA CO. v. UNITED STATES.

### (Circuit Court of Appeals, Sixth Circuit.   June 8, 1915.)

### No. 2611.

1. EMINENT DOMAIN ☞237—AWARD OF COMMISSIONERS—CONFIRMATION.

It is not the duty of the court to refuse to confirm or to set aside an award by commissioners in condemnation proceedings, unless it was clearly unreasonable and arbitrary.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 604–613; Dec. Dig. ☞237.]

2. EMINENT DOMAIN ☞205—SUFFICIENCY OF EVIDENCE—COMPENSATION.

In proceedings to condemn a strip of land adjacent to navigable water, the only value of which was a contingent value for future wharf purposes, evidence *held* not to show that the award of the commissioners was so low as to be unreasonable or arbitrary.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 544; Dec. Dig. ☞205.]

3. EMINENT DOMAIN ☞231—PROCEEDINGS—INSTRUCTIONS TO COMMISSIONERS—VALUE.

In proceedings by the government to condemn a tract of land belonging to a railroad and bordering on navigable water, tried before the court and commissioners, where there was evidence that the government had purchased an adjoining tract of less acreage, and shore line from another railroad company, which had a track extending to such land, so it could then be used to transfer freight between cars and boats, while the land in controversy was many miles from the nearest line of its owner and its value was purely speculative, it was not error to refuse to instruct the commissioners that the price paid for the other tract was controlling as to the value of the one sought to be condemned.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 585–589; Dec. Dig. ☞231.]

4. EMINENT DOMAIN ☞231—INSTRUCTIONS—ASSUMING FACTS.

In proceedings by the government to condemn part of a tract of land, where the trial proceeded on the theory that, if the existing government harbor improvements had been lawfully constructed, there was no damage to the part of the tract not taken, and the evidence was at least equally consistent with the existence of such improvement on the tract for more than 30 years without objection by the owner, it was not error to refuse instructions to the commissioners which assumed that the structure was unlawful.

[Ed. Note.—For other cases, see Eminet Domain, Cent. Dig. §§ 585–589; Dec. Dig. ☞231.]

In Error to the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Condemnation proceedings by the United States against the Pennsylvania Company. Judgment confirming the award made by the commissioners, and defendant brings error. Affirmed.

This is a condemnation proceeding. The Pennsylvania Company owned 1,800 feet of frontage along navigable water in Grand river, just above its opening into Lake Michigan. The United States desired storage space for apparatus and material used in harbor work, and so undertook to buy 1,200 feet of this frontage. Being unable to do so, it filed a condemnation petition in the District Court. Commissioners were appointed, and before the court and commissioners, as before court and jury, a trial was had. The com-

missioners made an award of $2,000, the court confirmed it, and the owner of the land brings this review. The questions presented are three: Was the award so inadequate that it should not stand? Should the price paid for adjacent land have been of persuasive or controlling effect? Were the proper rules applied with reference to damages caused to the remainder of the frontage not taken? We assume that these questions were properly raised and preserved and are now subject to review, but without intending to determine any of the matters which we so assume.

J. H. Campbell, of Grand Rapids, Mich., for plaintiff in error.

Myron H. Walker, U. S. Atty., of Grand Rapids, Mich., for the United States.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1, 2] 1. Unless the award was clearly unreasonable and arbitrary, it was not the duty of the court to set aside or to refuse to confirm. Shoemaker v. U. S., 147 U. S. 282, 293, 13 Sup. Ct. 361, 37 L. Ed. 170; Columbia Co. v. Rudolph, 217 U. S. 547, 560, 30 Sup. Ct. 581, 54 L. Ed. 877, 19 Ann. Cas. 854. This award cannot be so characterized. The sum found was much less than the parcel had cost the owner, and much less than the value assessed by the taxing authorities, but, on the other hand, was far above its value for any presently existing use. It comprised a small parcel of sandy beach, and it was practically—if not absolutely—worthless, save as it had a contingent, prospective value for wharf and dockage purposes. Because of this value in expectancy, the Pennsylvania Company had bought the property in 1873, and paid $10,000 for it; but, at the end of 40 years, this value was just as prospective as at the beginning. The case was peculiarly appropriate for rejecting both maximum and minimum views, and for fixing an amount which should give due regard to both aspects, and we cannot say that this is not what the commissioners did.

[3] 2. An adjacent part of the total property desired belonged to the Pere Marquette Railroad Company. This parcel was less in acreage and frontage than the one condemned. It was acquired by negotiation preliminary to proposed condemnation, and for $5,000; but the court refused to instruct the commissioners that the price paid was controlling as to the value of the condemned land, and refused to receive evidence based solely on such comparison. The price accepted by an owner to avoid condemnation proceedings may often, if not usually, be so far a matter of compromise that it is wholly inadmissible as bearing on the value of an adjacent parcel; but in this case the price itself appeared, and there was no error in instructing that it was not conclusive, nor in excluding evidence which assumed that the values of the two parcels must be to each other as were their respective areas. The bearing of the Pere Marquette sale upon the value of the Pennsylvania Company's parcel was, at the best, remote. The elements of value in the former were, at least in one respect, vitally different. It belonged to a railroad which ran into the adjacent city of Grand Haven, and which had a spur track leading into the parcel, and the parcel was presently capable of use for transfer between boat and rail, while the Pennsylvania Company had no line of railroad within many

miles, and it did not appear that there was any railroad or other purchaser, present or prospective, who would have any use whatever for the land. Under these conditions, we cannot assume that the price paid to the Pere Marquette would be a controlling comparative measure.

[4] 3. The remaining 600-foot portion of what we assume was the Pennsylvania Company's unitary parcel—and which portion was not condemned—was a narrow strip between a platted highway and what, at the time of the plat, had been the water's edge. At the time of this proceeding, a government harbor improvement, called a revetment, extended along the edge of the highway for nearly the whole distance in such manner that the strip which, according to the plat, belonged to the Pennsylvania Company, was occupied by the revetment or was outside of it and under water, excepting only where, because of an angle between the revetment and the highway, there was between the two, and belonging to the Pennsylvania Company, a trifling triangular piece of fast land. The case was tried on the theory, adopted by both sides, that if the government had a right to maintain this revetment, it operated to deprive this 600-foot parcel of its right of access to water, and so left no substantial value to be harmed by the taking of the 1,200-foot portion. We are not inclined, on our own motion, to question a theory thus acquiesced in by all the parties before the trial court; and so we do not decide whether this revetment was essentially different in character and effect from the ordinary river bank levee. The contention of the landowner was that, in fixing damages, the existence of the revetment should be disregarded, because its erection by the government had been unlawful, and its maintenance was a continuing trespass; and the claim of unlawful erection was to the effect that the structure had been built in 1911, and upon what was at the time fast land, rather than upon submerged land. The requested instructions upon this subject, the refusal of which is relied upon as error, all rested upon the assumption that the building of the revetment had been done at that time and in this manner. The testimony did not require such assumption, even if it tended to support these claims. The proofs are at least equally consistent with the idea that the structure, during practically its entire length across this 600 feet, had been in position without material change for 30 years, and without an objection from the land owner. The testimony regarding the building of a new revetment in 1911 relates—probably, if not certainly—only to that portion in front of the "government basin" and barely touching the 600-foot parcel.[1] Clearly, upon the accepted assumption that a lawfully built structure burdened riparian values, the situation so shown would not justify fixing damages as if the burden were not there.

4. Other questions are raised or suggested by the record; but they are either not argued in the brief of the Pennsylvania Company or seem to be sufficiently covered by what has been said.

The judgment is affirmed, without costs.

[1] The map, Exhibit D, expressly shows by one of its legends that only that part of the old pier in front of the basin was removed in 1911.